IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 18-cv-1601-WJM-KLM

JASON LANGLEY,

    Plaintiff,

v.

CANADREAM CORPORATION,

    Defendant.

**ORDER DENYING DEFENDANT'S MOTION TO ENFORCE SETTLEMENT AND DENYING PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS**

    This is a copyright infringement lawsuit. Plaintiff Jason Langley ("Langley"), a professional photographer, sues CanaDream Corporation ("CanaDream"), an RV rental company, for using one of Langley's copyrighted photographs on a CanaDream website without Langley's permission. (*See generally* ECF No. 1.) Currently before the Court are two motions:

- Langley's Motion to Dismiss (ECF No. 18), seeking to dismiss CanaDream's counterclaims; and

- CanaDream's Motion to Enforce Settlement Agreement, or, in the Alternative, Set Early Neutral Evaluation ("Motion to Enforce Settlement") (ECF No. 37).

    Because the Motion to Enforce Settlement could moot the Motion to Dismiss, the Court will address it first. For the reasons explained below, the Court finds that the parties never entered into a sufficiently definite settlement, and so the Motion to Enforce

Settlement will be denied.  CanaDream's alternative request for an order directing the parties to attend an early neutral evaluation will also be denied as futile in the present circumstances.  As for the Motion to Dismiss, it is filed under Federal Rule of Civil Procedure 12(b)(6), but its arguments are patently *not* Rule 12(b)(6) arguments, and so are frivolous.  For that reason, the Motion to Dismiss will also be denied and Langley's counsel will be admonished.

## I. MOTION TO ENFORCE SETTLEMENT (ECF No. 37)

**A.     Legal Standard**

"A trial court has the power to summarily enforce a settlement agreement entered into by the litigants while the litigation is pending before it."  *Shoels v. Klebold*, 375 F.3d 1054, 1060 (10th Cir. 2004) (internal quotation marks omitted).  Because settlement agreements are contracts, "[i]ssues involving the formation and construction of a purported settlement agreement are resolved by applying state contract law."  *Id.* at 1060.  This is true "even when there are federal causes of action in the underlying litigation."  *Gates Corp. v. Bando Chem. Indus., Ltd.*, 4 F. App'x 676, 682 (10th Cir. 2001).

Colorado public and judicial policies favor voluntary agreements to settle legal disputes.  *See Colo. Ins. Guar. Ass'n v. Harris*, 827 P.2d 1139, 1142 (Colo. 1992).  However, a court may enforce a settlement agreement only if it constitutes an enforceable contract.  *See H.W. Houston Constr. Co. v. District Court*, 632 P.2d 563, 565 (Colo. 1981).  In Colorado, "[i]n order for a settlement to be binding and enforceable, there must be a 'meeting of the minds' as to the terms and conditions of the compromise and settlement."  *Id*.  "[T]he evidence must show that the parties agreed upon all essential terms."  *I.M.A., Inc. v. Rocky Mountain Airways, Inc.*, 713 P.2d

2

882, 888 (Colo. 1986). Stated somewhat differently, "[t]o have an enforceable contract it must appear that further negotiations are not required to work out important and essential terms." *New York Life Ins. Co. v. K N Energy, Inc.*, 80 F.3d 405, 409 (10th Cir. 1996) (citing *Am. Mining Co. v. Himrod-Kimball Mines, Co.*, 235 P.2d 804, 807–08 (Colo. 1951)).

**B.    Background**

    1.    <u>Allegations of the Complaint</u>

In September 2007, Langley took a high-quality photograph of Bear Lake in Rocky Mountain National Park. (¶ 8;[1] *see also* ECF No. 1 at 6.)[2] Later that same month, Langley posted the photo for others to view on www.seekingfocus.com. (¶ 9; *see also* ECF No. 1 at 7.) Langley does not explain the purpose of this website, which now appears defunct. Langley registered the Bear Lake photograph with the United States Copyright Office in June 2011. (¶ 10.)

CanaDream is an Alberta-based company that rents RVs, including through an office in Aurora, Colorado. (¶ 2.) Beginning in September 2015 and continuing at least through June 2018, CanaDream used the Bear Lake photograph on one of its websites, www.ameridream-rv.com (also now defunct), to advertise a suggested RV vacation itinerary through Colorado and Wyoming. (¶¶ 11–12; *see also* ECF No. 1 at 9.) CanaDream did not have Langley's permission to use the photograph. (¶ 16.)

    2.    <u>Procedural History & Settlement Negotiations</u>

Langley filed this lawsuit on June 26, 2018. (ECF No. 1.) On October 25, 2018,

---

[1] All "¶" citations, without more, refer to the Complaint (ECF No. 1).

[2] All ECF page citations are to the page number in the CM/ECF header, which does not always match the document's internal pagination, particularly in exhibits with unnumbered cover pages.

3

he moved for an extension of time to complete service of process, explaining that his counsel, Mr. David Deal, had mailed waiver-of-service packets but they had been "returned marked 'refused,'" and so, as of late August 2018, Mr. Deal was relying on the assistance of the Canadian government to serve process. (ECF No. 11 at 1–2.) As of that time, Mr. Deal had "not received confirmation of service." (*Id.* at 2.) The magistrate judge granted this motion, extending Langley's service deadline to December 21, 2018. (ECF No. 13.)

Sometime before December 18, 2018—and still before Mr. Deal had received word from the Canadian government about service of process—CanaDream retained Colorado counsel, Mr. James Juo, who sent a letter to Mr. Deal claiming that any alleged infringement had been innocent and that the accused image had been removed from the website as of October 5, 2016, well before June 2018 (as alleged in the complaint). (ECF No. 17 at 9, ¶ 31.)

The following day (December 19), Mr. Deal and Mr. Juo had a telephone conversation to discuss possible settlement. (*Id.* ¶ 33; ECF No. 18 at 2–3.) Mr. Deal claims that, during that telephone call, Mr. Juo would neither confirm nor deny whether CanaDream had been served with process. (*Id.*) Mr. Deal also agreed with Mr. Juo that the complaint's assertion that the infringing photograph had been on CanaDream's website as of June 2018 was a mistake and would be corrected by amendment, if needed. (*Id.* at 3.)[3]

On December 20, 2018, Mr. Juo e-mailed Mr. Deal to follow up on the previous

---

[3] Langley does not explain what the mistake was, *i.e.*, what month or year he meant to plead. He has not moved to amend the complaint.

day's telephone conversation. (ECF No. 37-1 at 5–6.)[4] Mr. Juo provided some factual rebuttal to what the parties had discussed and concluded as follows: "The documents show that CanaDream removed the accused image a month BEFORE receiving any communication from you. I have seen nothing to the contrary. You should take this into consideration for any settlement counteroffer Mr. Langley may propose." (*Id.* at 6 (capitalization in original).) Mr. Juo's mention of a forthcoming counteroffer from Langley implies that CanaDream had made an offer, but the parties do not say what it was. In any event, Mr. Deal replied later that day and expressed skepticism that the timing of CanaDream's removal of the accused image would "make[] a difference in the issue of statutory damages" (*id.* at 5), apparently referring to 17 U.S.C. § 504(c). Mr. Deal nonetheless conveyed a settlement offer (or counteroffer) as follows:

> In the interest of the parties not expending additional resources, Mr. Langley will agree to settle the matter for $2,900.00, which includes $2,250.00 (3x minimum statutory damages) plus $400.00 filing fee and $250.00 in service costs.
>
> If we remain in disagreement, Mr. Langley will choose to proceed through at least the discovery stage.

(*Id.*)

Mr. Juo responded to this offer on December 27, 2018. (*Id.* at 3–4.) After again arguing what he believed to be CanaDream's strengths on the merits of the case, he addressed the settlement offer as follows: "Nonetheless, to avoid incurring litigation expenses in this low-value case, CanaDream counter-offers $1400, which represents $750 (minimum statutory damages) plus the 'costs' of $650 outlined in your prior email."

---

[4] Langley does not challenge the authenticity or relevance of ECF No. 37-1, which is the e-mail chain that, according to CanaDream, embodies the settlement.

5

(*Id.* at 4 (underscoring in original).)  Later that same day, Mr. Deal replied, "Thank you for the email.  I have discussed this case at length with my client (mostly during the months your client was busy avoiding service).  His offer of $2,900.00 is firm.  If this means we are forced to try the case, so be it."  (*Id.* at 3.)

In the late morning of January 8, 2019, Langley filed a return of service from the Canadian authorities showing that CanaDream had been served with process on November 2, 2018.  (ECF No. 14.)  In the mid-afternoon of January 8, Mr. Juo continued the settlement e-mail thread by announcing that

> CanaDream is willing to pay $2900 in exchange for:
>
> - a dismissal with prejudice of the present action;
>
> - a release of CanaDream and every parent company or subsidiary of CanaDream, and each of their respective current and former officers, directors, shareholders, employees, agents, distributors, and customers, with regards to any claims arising from any of the acts, actions, or transactions which are or which could have been asserted against Frictionless World,[5] whether known or unknown, foreseen or unforeseen, anticipated or unanticipated, as of the signing of the Agreement; and
>
> - a covenant not to sue with respect to the copyrighted image
>
> Please let me know immediately if Plaintiff accepts.

(ECF No. 37-1 at 2 (formatting in original).)  Mr. Deal soon replied, "Thank you for the email.  Your client turned down our $2,900.00 offer and it is no longer available.  I will consult my client and get back to you with our position."  (*Id.*)

---

[5] No party explains this reference to Frictionless World.  The Court suspects that Mr. Juo was copying and pasting language used on behalf of another client.

**C.     Analysis**

CanaDream argues that Langley's December 20, 2018 offer to settle for $2,900 remained on the table, despite CanaDream's counteroffer, through January 8, 2019; and that, on January 8, CanaDream accepted. (ECF No. 37 at 2–3.) In response, Langley does *not* argue that CanaDream's January 8 e-mail (with its specific requests and its conclusion, "Please let me know immediately if plaintiff accepts") demonstrates that there was no meeting of the minds regarding essential terms. *Cf. I.M.A*, 713 P.2d at 888; *H.W. Houston*, 632 P.2d at 565. Langley also does *not* contest CanaDream's assertion that Mr. Deal's December 27, 2018 e-mail, in which he reported that the $2,900 offer "is firm," was a "reiterate[ion]" of that offer, meaning it remained open for acceptance. (ECF No. 37 at 3.)

Langley instead responds as follows:

> Langley opposes Canadream's motion because the Parties never agreed in principle to settle this case, let alone contemplate a written Settlement Agreement. Langley's $2,900.00 offer was made with the Parties' clear and unambiguous understanding that Langley would be unable to properly serve Canadream by the Court-ordered [December 21, 2018] deadline. Once Langley received documentation that Langley possessed proof Canadream had properly been served, the circumstances on which Langley's $2,900.00 offer was based had changed significantly and the offer was no longer available. . . . [Mr.] Juo and Canadream knew once Langley learned what Canadream already knew, that Canadream had been properly served on November 2, 2018, Langley's $2,900.00 offer would no longer be available.

(ECF No. 39 at 4–5.)

Langley cites nothing to support his claim that the parties always understood that Langley offered $2,900 to settle in light of uncertainty about the ability to effect timely service of process. The parties' e-mail correspondence says nothing about this (*see*

7

ECF No. 37-1), and Mr. Deal's declaration regarding the parties' December 2018 telephone conversations likewise does not claim as much (*see* ECF No. 18-1). Moreover, when Mr. Deal stated in his January 8, 2019 e-mail that the $2,900 offer was "no longer available," his only explanation was that CanaDream had "turned [it] down." (ECF No. 37-1 at 2.) He said nothing about circumstances having changed in light of successful service of process.

Thus, Langley's opposition argument lacks merit. But the Court is still not convinced that a settlement agreement came into existence. CanaDream's position must necessarily be that Mr. Juo's January 8 e-mail constituted an acceptance of Langley's December 20 offer, as conveyed by Mr. Deal's e-mail of that date. The December 20 e-mail has only one explicit settlement term: that the parties will "settle the matter for $2,900.00." (ECF No. 37-1 at 5.) If this Court were to declare, "*That* is your settlement agreement, case dismissed,"[6] the Court must be mindful of what would happen if one party or the other later filed a motion, or an independent lawsuit, claiming breach of the agreement. Would the agreement be sufficiently definite for a court to interpret and enforce it?

It is probably fairly implied that the purported settlement agreement encompasses various other terms that accompany all settlements—terms that no party would do without when settling a lawsuit, such as dismissal of the lawsuit with prejudice within a reasonable amount of time. But the Court need not decide just how far an agreement on the dollar amount alone could go without making other terms explicit. In

---

[6] The Tenth Circuit counsels that a district court granting a motion to enforce a settlement agreement should "enter judgment dismissing plaintiff's action as settled." *Gates Corp. v. Bando Chem. Indus., Ltd.*, 4 F. App'x 676, 682 (10th Cir. 2001) (citing *Heuser v. Kephart*, 215 F.3d 1186, 1189 (10th Cir. 2000)).

light of the copyright nature of this case and the facts as alleged, the Court finds that the purported settlement lacks a material term, namely, whether CanaDream is buying a license to use Langley's photograph, or whether CanaDream is agreeing never to use it again. In these circumstances, the lack of that term makes the purported settlement too indefinite to be enforceable.

Accordingly, the Court may not declare that Mr. Juo's January 8 e-mail constituted an acceptance of the December 20 offer and therefore a formation of an enforceable settlement agreement. In turn, the Court may not grant CanaDream's primary request for relief in its Motion to Enforce Settlement.

D.      **Alternative Request for Early Neutral Evaluation**

CanaDream alternatively asks the Court to order the parties to participate in an early neutral evaluation because CanaDream "is concerned that counsel for [Langley] has an unrealistic view of the merits and value of this case." (ECF No. 37 at 4.) *See also* D.C.COLO.LCivR 16.6(a) ("A district judge . . . may direct the parties to engage in an early neutral evaluation or other alternative dispute resolution proceeding."). However, the undersigned's practice is not to order the parties to an early neutral evaluation, settlement conference, or other similar proceeding, without both sides' affirmative interest in such a proceeding. Langley has not expressed such interest, so the Court will enter no such order at this time.

Accordingly, the Motion to Enforce Settlement is denied in its entirety.

## II. LANGLEY'S MOTION TO DISMISS (ECF No. 18)

A.      **Rule 12(b)(6) Standard**

Under Rule 12(b)(6), a party may move to dismiss a claim or counterclaim in a complaint for "failure to state a claim upon which relief can be granted." The 12(b)(6)

9

standard requires the Court to "assume the truth of the [counterclaimant's] well-pleaded factual allegations and view them in the light most favorable to the [counterclaimant]." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). In ruling on such a motion, the dispositive inquiry is "whether the [counterclaim] contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotation marks omitted). "Thus, 'a well-pleaded [counterclaim] may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556).

**B.     Allegations**

CanaDream pleads two ostensible counterclaims. The first is "Declaratory Judgment of Innocent Infringement." (ECF No. 17 at 5 at 7.) This refers to 17 U.S.C. § 504(c)(2), which provides in relevant part, "In a case where the infringer sustains the burden of proving, and the court finds, that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court in its discretion may reduce the award of statutory damages [from $750] to a sum of not less than $200." CanaDream alleges that the allegedly infringing website was designed by "[a] third party in South Africa" and that CanaDream "believed that the images used for the website . . . had been obtained through a Shutterstock subscription." (*Id.* ¶¶ 7– 8.) In addition, CanaDream alleges that it has a "policy of regularly conducting an annual IP audit of its websites" and that it caught and removed Langley's photo in

October 2016. (*Id.* at 6, ¶¶ 10–12.)

CanaDream's second counterclaim is for "Violation of 28 U.S.C. § 1927 for Vexatious Litigation." (ECF No. 17 at 8–10.) Here, CanaDream alleges that Langley's insistence on continuing to litigate, especially after CanaDream's assent to the $2,900 settlement price, is vexatious. (*See generally id.*)

**C.     Analysis**

The Court questions whether CanaDream has pleaded anything that is properly framed as a counterclaim. Innocent infringement is an affirmative defense. By definition, it first requires infringement, so to plead it as a counterclaim is necessarily to admit infringement—which contradicts CanaDream's denial of the infringement allegations in Langley's complaint. (*Compare* ECF No. 1 at 3, ¶ 16 *with* ECF No. 17 at 2, ¶ 16.) As for 28 U.S.C. § 1927, the Court is aware of no case—and CanaDream cites none—holding that the statute creates a cause of action, as opposed to a remedy a party may request by way of motion. But Langley makes none of these arguments, so the Court will not definitively rule on them in this posture.

1.     <u>Innocent Infringement</u>

Concerning CanaDream's innocent infringement counterclaim, Langley argues for dismissal as follows:

> Defendant has failed to provide any evidence concerning the existence and/or practices of the "third party in South Africa." Specifically, Defendant's counterclaim does not include the following:
>
> •     Source from which the "third party in South Africa" allegedly copied Copyrighted Photograph
>
> •     Date on which the "third party in South Africa" allegedly copied Copyrighted Photograph

11

> - Name, address, and contact information of the "third party in South Africa"
>
> - Affidavit from the "third party in South Africa" attesting to their policies concerning the use of visual material
>
> - Copy of the purported Shutterstock license used by the "third party in South Africa"
>
> All of the above-listed information, if true, would be easily accessible to Defendant and would go a long way to bolstering Defendant's claim of innocent infringement. Conveniently, Defendant failed to include them [*sic*].

(ECF No. 18 at 5.) Langley then goes on to describe the doctrine of vicarious liability, which could potentially hold CanaDream liable for the South African entity's actions based on CanaDream's supervisory authority and financial interest. (*Id.* at 6 (citing *Shapiro, Bernstein and Co. v. H.L. Green Co.*, 316 F.2d 304 (2d Cir. 1963), and *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001)). With this background, Langley continues,

> If the "third party in South Africa" actually exists, Defendant certainly had the right and ability to supervise the infringing activity as well as a direct financial interest in their activities. Whether Defendant did or did not "[b]elieve[] that the images used for the website at ameridream-rv.com had been obtained through a Shutterstock subscription" is not relevant to determining whether Defendant's infringement was innocent or willful. The actions, policies, and practices of the "third party in South Africa" are the ones required to be examined. Is [the] "third party in South Africa" an individual or a large company? Do they indeed subscribe to Shutterstock? Do they use Shutterstock exclusively for sourcing visual material? Do they have an established policy of obtaining visual material for their clients? Where and when did the "third party in South Africa" source Copyrighted Photograph? Without the answer to these most basic questions the Court is unable to render a judgment on Defendant's claim of innocent infringement.

(*Id.*) Finally, Langley notes that

> Even with finding of "innocent infringement," the Court can elect not to reduce statutory damages. . . . The question of the appropriate amount of statutory damages to award involves consideration of a wide array of factors by the Court, from the degree of willfulness or inadvertence by the infringer to the deterrent purposes of the Copyright Act and the typical license fees charged for the use of the work. Accordingly, it would not be appropriate for the Court to entertain the question of statutory damages without, at the very least, a significant evidentiary presentation by the parties.

(*Id.* at 7 (citation omitted).)

These arguments, as Rule 12(b)(6) arguments, are frivolous on their face. They have nothing to do with the various applicable standards under Rule 8, Rule 12, or *Twombly*/*Iqbal*. This should have been obvious to Mr. Deal from the structure of the argument generally. But, at the very least, an attorney who finds himself writing phrases like the following should know that he is far afield from any Rule 12(b)(6) challenge:

- "Defendant's counterclaim does not include * * * [the] [n]ame, address, and contact information of the 'third party in South Africa' [or an] [a]ffidavit from the 'third party in South Africa' attesting to their policies concerning the use of visual material[.]"

- "Without the answer to these most basic questions the Court is unable to render a judgment on Defendant's claim of innocent infringement."

- "[I]t would not be appropriate for the Court to entertain the question of statutory damages without, at the very least, a significant evidentiary presentation by the parties."

The Court therefore rejects Langley's arguments for dismissing CanaDream's

first counterclaim.

### 2. Vexatious Litigation

Langley attacks CanaDream's vexatious litigation claim by citing to an attached declaration from Mr. Deal, providing his side of the story regarding service of process and settlement negotiations. (*Id.* at 7–8 (citing ECF No. 18-1).) Langley's argument is, in essence, that when the full story is told (including consideration of materials outside the pleadings), CanaDream and Mr. Juo are the real bad actors and "should not be rewarded for their behavior." (*Id.* at 9.)

Again, these arguments, as Rule 12(b)(6) arguments, are frivolous on their face.[7] They have nothing to do with plausible *pleading*. They appear to be Mr. Deal's attempt simply to get his side of the story into the record. That is not a proper purpose of a Rule 12(b)(6) motion and will not be further tolerated.

The Court therefore rejects Langley's arguments for dismissing CanaDream's second counterclaim.

\* \* \*

For the foregoing reasons, Langley's Motion to Dismiss fails in its entirety. The Court also admonishes Mr. Deal for filing a frivolous motion, and warns him that further abuse of the judicial process will result in an order to show cause why he should not be sanctioned.[8]

---

[7] Mr. Deal has also ignored the undersigned's requirement that, "[i]f a motion to dismiss is filed pursuant to Fed. R. Civ. P. 12(b)(6) and matters outside the pleadings are presented with the motion, the motion shall include a brief statement addressing whether the motion should be converted to a motion for summary judgment." WJM Revised Practice Standard III.D.3.

[8] This admonishment has nothing to do with the facts CanaDream alleges in support of its § 1927 counterclaim. It arises solely from Mr. Deal's frivolous motion arguments.

## III. CONCLUSION

For the reasons set forth above:

1. Langley's Motion to Dismiss (ECF No. 18) is DENIED; and

2. CanaDream's Motion to Enforce Settlement Agreement, or, in the Alternative, Set Early Neutral Evaluation (ECF No. 37) is DENIED.

Dated this 23rd day of July, 2019.

BY THE COURT:

_____
William J. Martinez
United States District Judge